IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00432-MSK-CBS

SHIRLEY MORRIS,

       Plaintiff,

v.

JOHN E. POTTER, Postmaster General,

       Defendant.

_____

**OPINION AND ORDER DENYING MOTION TO ALTER JUDGMENT AND
GRANTING, IN PART, MOTION FOR ATTORNEY'S FEES**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff Shirley Morris'

Motion for Award of Back Pay[1] **(# 59,** as amended **# 60)**; Ms. Morris' Motion to Modify the

Judgment to Include Overtime Pay **(# 64)**, Defendant Potter's response **(# 66)**, and Ms. Morris'

reply **(# 69)**; and Ms. Morris' Motion for Attorney's Fees **(# 70)**, Mr. Potter's response **(# 73)**,

and Ms. Morris' reply **(# 74)**.

**FACTS**

Ms. Morris, an employee of the United States Postal Service under the command of Mr.

Potter, commenced this action arising out of events at her workplace in 2003 and 2004. Ms.

_____

[1]Both the original and amended motions were effectively superseded by Ms. Morris'
subsequent Motion to Modify the Judgment. For purposes of this Order, the Court treats the
original and amended Motions for Award of Back Pay as moot, and considers only Ms. Morris'
Motion to Modify the judgment. The Court deems Mr. Potter's response to the Motion For
Award of Back Pay to apply to the Motion to Modify Judgment.

Morris asserted claims for sex discrimination, hostile environment sexual harassment, and retaliation, all under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* The case was tried to a jury in May 2008, and the jury returned verdicts in favor of Mr. Potter on the sex discrimination and sexual harassment claims, but in favor of Ms. Morris on the retaliation claim. The jury awarded her $ 25,000 in compensatory damages on that claim. Accordingly, the Court confines its factual discussion to only those facts germane to the retaliation claim.

During the events at issue, Ms. Morris was employed as a forklift operator in the General Mail Facility ("GMF"), working on the swing shift. As early as 1998, Ms. Morris made a number of formal and informal complaints about inappropriate and harassing behavior by her co-worker, Michael Ramsey. On October 21, 2003, Ms. Morris' forklift and Mr. Ramsey were involved in a "near-miss" accident. During the Postal Service's investigation into the accident, Mr. Ramsey complained that he felt threatened by Ms. Morris. Based on Mr. Ramsey's complaint,[2] Ms. Morris was temporarily reassigned to the Priority Mail Facility and her forklift license was suspended during the pendency of the Postal Service's investigation into the accident. In December 2003, the Postal Service completed its investigation into the incident, returning Ms. Morris to the GMF and restoring her forklift license.

In January 2004, Ms. Morris filed a complaint of sexual harassment against Mr. Ramsey. As part of its investigation, the Postal Service reassigned Mr. Ramsey to the Priority Mail Facility. In September 2004, Mr. Ramsey was returned to the GMF. Although he had been

---

[2]In explaining the reassignment to Ms. Morris, Postal Service management also made reference to Ms. Morris' prior complaint of sexual harassment that Ms. Morris had filed against co-worker Teska Lesna in February 2003. As the colloquy on Mr. Potter's Rule 50 motion and Ms. Morris' closing argument developed, it became clear that it was primarily this complaint that Ms. Morris believes caused the retaliation against her.

instructed to stay away from Ms. Morris, Mr. Ramsey continued to show up in her work area

periodically. Ms. Morris testified that, at this point, she stopped working overtime because

"when I would stay for overtime, [Mr. Ramsey] would be where we were doing the overtime."

At some point in late 2004, Ms. Morris was summoned to a meeting with a Postal Service

supervisor and informed that Mr. Ramsey was complaining about her. The supervisor suggested

that one way in which Ms. Morris could avoid interacting with Mr. Ramsey was to bid for a

different shift. Ms. Morris did so, and in February 2005, her bid to transfer to a position on the

day shift was approved.[3]

Ms. Morris testified that, during her time on the swing shift, whenever she would work

overtime, her husband and co-worker, Dan Ceroni, would work overtime as well. Mr. Ceroni

transferred to the day shift at the same time as Ms. Morris, and continued to work overtime.

However, Ms. Morris did not work overtime while on the day shift, explaining that "it would

have put me into the same hours that Michael Ramsey works."

At the conclusion of the trial, the Court inquired of both counsel whether they had

additional motions to make. Both counsel responded in the negative. Accordingly, the Court

announced that it would immediately enter judgment on the jury's verdict, and did so **(# 61)** on

May 9, 2008, the Court entered judgment in favor of Ms. Morris in the amount of $ 25,000.

Ms. Morris timely filed the instant Motion to Modify Judgment **(# 64)**, arguing that: (i)

awards for back pay and other lost compensation are questions for resolution by the Court, not

the jury, under Title VII; and (ii) Ms. Morris offered evidence that her reassignment in October

---

[3]Ms. Morris has held two different positions since transferring to the day shift: a position
as a level 4 mail handler and a position as a level 5 forklift operator.

2003, found to have been retaliatory by the jury, deprived her of overtime compensation in the

amount of $57,503.  Accordingly, she requested that the Court modify the judgment to include

an award of lost overtime in this amount.

Ms. Morris also filed a timely Motion for Attorney's Fees **(# 70)**, requesting a total of

$195,585 in attorney's fees and $ 4,283.58 in costs.

## ANALYSIS

### A.  Motion to Amend Judgment

Ms. Morris moves to modify the judgment pursuant to Fed. R. Civ. P. 59(e) to include an

award of back pay.  Grounds for relief under Fed. R. Civ. P. 59(e) include an intervening change

in the controlling law, newly-discovered evidence, or the need to correct clear error or prevent

manifest injustice.  *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 910th Cir. 2000).

However, it is not an appropriate vehicle to revisit issues that were or could have been presented

in earlier proceedings.  *Id.*

The Court has some doubt that Rule 59(e) would afford Ms. Morris relief under these

circumstances.  Ms. Morris does not allege that the Court's Judgment is incorrect or

incompletely reflects the jury's verdict.  Rather, she raises, for the very first time in this action,

an argument that the matter of back pay has been reserved for the Court's consideration and

remains outstanding.  Ms. Morris is correct that, technically, awards of backpay under Title VII

are equitable in nature, and thus, such awards are the province of the Court, not the jury.

*Chauffeurs, Teamsters, and Helpers Local 391 v. Terry,* 494 U.S. 558, 571-72 (1990), *citing*

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415-18 (1975).  However, Ms. Morris counsel, as

active members of the local employment law bar, should also have been aware of the Court's

4

general practice to submit backpay issues to the jury for an advisory verdict. The Court has

extensively reviewed the transcript of the Pretrial Conference and trial, and has found no

instance in which Ms. Morris' counsel advised the Court that they desired that the Court reserve

the issue of backpay for its own exclusive consideration, nor confirm that the Court shared that

expectation.

More importantly, after releasing the jury at the close of trial, the Court inquired of

counsel whether there were any additional motions either party wished to make. Ms. Morris'

counsel did not raise the issue of backpay at this point, and thus, the Court announced its

intention to enter judgment "upon the verdict rendered by the jury." Thus, the Court deems Ms.

Morris to have abandoned any request that the Court separately consider the issue of backpay.

For that reason alone, the motion is denied.

Nevertheless, the Court would also deny the motion on its merits, for several reasons.

First, the Court would deny the motion as insufficiently supported. Although it cites to a number

of stipulated facts when providing a historical recitation of the events at issue, the two factual

issues essential to the motion are not supported by meaningful citations. Ms. Morris cites to no

authority whatsoever for the proposition that "[a]s a result" of bidding on a new shift at the

suggestion of Postal Service management, "Plaintiff was denied overtime that she otherwise

would have earned had she not changed shifts." In other words, she cites to no evidence for the

proposition that an act of retaliation caused her to suffer the loss of overtime opportunity.

Moreover, although she cites generally to the "testimony of Dan Ceroni" for the proposition that

the value of her lost overtime was $ 57,503, she fails to attach a transcript of Mr. Ceroni's

testimony or otherwise direct the Court to the specific location in the record where this fact is

established. Without direction to the specific evidence supporting a contention, the Court is left in the position of having to comb the record *sua sponte* in order to locate evidence supporting Ms. Morris' assertions. This improperly requires the Court to abrogate its position as a neutral and become an advocate for a party. *See generally Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir. 1998).

Second, the Court would find that Ms. Morris' claim for damages springs from a theory that was never presented to the jury, and thus, the overtime pay she seeks is not supported by the jury's verdict. The Court understands Ms. Morris' argument to be that the retaliatory conduct found by the jury to have occurred encompassed the Postal Service's management's suggestion that she bid for a different shift, and that is was this "retaliatory" act that caused her to lose overtime opportunities amounting to $ 57,503 after October 2004.

This stands in stark contrast to Ms. Morris' description of her retaliation claim during trial. During colloquy on Mr. Potter's oral motion for judgment pursuant to Fed. R. Civ. P. 50, Ms. Morris' counsel was asked to detail the protected activity Ms. Morris engaged in. Ms. Morris' counsel described two events: (i) Ms. Morris filing a harassment complaint against Ms. Lensa in February 2003; and (ii) Ms. Morris complaining to her supervisor on October 21, 2003, during discussion of the near-miss accident, that Mr. Ramsey was sexually harassing her. The Court then inquired what Ms. Morris contended was the adverse action that followed from that protected activity, and Ms. Morris' counsel replied "Ms. Morris was emergency placed out of the building." In other words, the only adverse action identified by counsel was the October 2003 decision to reassign Ms. Morris to another building pending investigation of the forklift accident and the allegations that followed thereupon. At no point during his initial explanation of Ms.

Morris' retaliation claim did her counsel ever indicate that he asserted that the October 2004 suggestion that she bid for a new shift was a separate, actionable act of retaliation.

After hearing the parties' positions on the Rule 50 motion, the Court deferred ruling in order to permit Ms. Morris' counsel to submit case authority in support of certain positions he had taken. When the Court reconvened the following morning, Ms. Morris' counsel argued that management's encouragement that she bid for a day shift position constituted a "constructive demotion" – that is that "the discrimination, the cumulative discrimination against Ms. Morris as compared to Mr. Ramsey -- in other words, the best idea the Postal Service can come up with to resolve this ongoing discrimination is to suggest that Shirley Morris leave her [swing shift] job" in favor of a position on the day shift with diminished opportunities for overtime work. The Court characterized this contention as "a whole new argument that has never been advanced in this case," and observed that "this case persists in morphing at every juncture." When invited to conclude his argument, Ms. Morris' counsel offered yet another theory: that although he had previously argued that the retaliation claim was supported by the "continuing violation doctrine," should "more properly [be] labeled a hostile work environment based on retaliation."

After both sides had been heard, the Court denied Mr. Potter's Rule 50 motion, finding that "there is evidence . . . that in the determination to place Ms. Morris in another facility, the employer considered the harassment complaints filed by Ms. Morris. And that by itself could constitute causation for the retaliation." However, the Court made clear that it understood that "[t]he retaliation was the emergency placement of Ms. Morris in October of 2003 after the near miss episode." It expressly rejected any contention that a "continuing violation" theory could

7

apply to a retaliation claim, and stated that it would "limit the theories on which

[the retaliation claim] can be submitted to the jury," effectively rejecting any newly-raised

theories that the retaliation claim could be extended to encompass the suggestion that Ms. Morris

consider bidding on a day shift position.

Similarly, in his closing argument, Ms. Morris' counsel appeared to limit the retaliation

claim to the transfer of Ms. Morris to the GMF in 2003:

> No. 3 or third is our retaliation claim. And this retaliation claim
> primarily is going to be looking at the plaintiff and the Ms. Lesna
> situation. Ms. Morris files that charge of discrimination of
> February, 2003. No doubt about it. It's stipulated that was a
> protected activity. . . We have two kinds of proof on that. We have
> direct proof because Judy Ford stated that in part the determination
> to put her on out of the building was based on the Lesna complaint
> and it had cost the labor department too much money. That is a
> direct causal connection between the complaint and the adverse
> actions.

(Emphasis added). Nowhere in his closing argument did Ms. Morris' counsel argue that the

suggestion that she consider bidding on a day shift position constitute a separate, actionable act

of retaliation.

Accordingly, the Court finds that when the jury returned a verdict in favor of Ms. Morris

on the retaliation claim, that verdict reflected the jury's conclusion that retaliation occurred when

Ms. Morris was transferred to the GMF from October to December 2003. The jury's verdict

does not reflect any finding that the suggestion that she bid to a day shift job in late 2004 or early

2005 constituted retaliation, as that issue was not presented to the jury for adjudication. Because

Ms. Morris' claim for lost overtime does not relate to her reassignment to the GMF in 2003, the

8

Court finds that her request for damages is not supported by the jury's verdict.[4]

Therefore, Ms. Morris' Motion to Amend the Judgment is denied.

**B. Attorney's fees**

Ms. Morris requests $195,585 in attorney's fees and $ 4,283.58 in costs. In response, Mr. Potter challenges the both the hourly rates requested by Ms. Morris' counsel and the reasonableness of the hours expended. Mr. Potter contends that the appropriate fee award is $59,627, and that additional costs in the amount of $ 3,280.95 are appropriate.

When considering a claim for attorney's fees, the moving party bears the burden of proving her entitlement to an award, as well as the appropriateness of the hours expended and the hourly rate sought. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). If the plaintiff carries the burden of establishing an appropriate amount of hours spent and a reasonable fee, those numbers are used to generate a "lodestar" amount. *Praseuth*, 406 F.3d at 1257; *Robinson v. City of Edmond*, 160 F.3d 1275, 1280-81 (10th Cir. 1998). The lodestar is a presumptively reasonable fee award, taking into account most of the factors that bear on the reasonableness of the award, and thus, adjustments to the lodestar should only be made in rare and exceptional cases. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564-65 (1986).

---

[4]Were it to reach the question substantively, the Court would deny the motion on several other grounds as well. The Court would find that, to the extent Ms. Morris argues that a "suggestion" that she change shifts to avoid Mr. Ramsey constitutes an actionable instance of retaliation, she fails to show that the suggestion is an adverse employment action sufficient to support the claim. In addition, the Court would find that, factually, Ms. Morris' testimony suggests that she stopped working overtime before any suggestion by management that she change shifts, and thus, the shift change was not the cause of her loss of overtime.

The Court declines to speculate whether Ms. Morris could have stated a cognizable claim sounding in retaliation that would permit her to recover for lost overtime opportunities. It is sufficient to note that the case she pled and presented at trial does not.

The Defendants challenge the hourly rate claimed for Ms. Morris for the various

attorney providing services to her.  The Court determines a reasonable hourly rate based on the

parties' submitted evidence of market data showing rates charged by attorneys of comparable

skill and experience in the area.  *Case v. Unified School Dist.*, 157 F.3d 1243, 1256 (10th Cir.

1998).  Here, Ms. Morris requests an hourly rate of $ 375 for her lead counsel, Mr. LaFond, for

all hours he expended in this case.  Mr. Potter raises two issues with regard to this request: (i)

that Mr. LaFond should only recover for services rendered in earlier years according to the

historical hourly rates he charged in those years, rather than at his 2008 rate; and (ii) that the

maximum reasonable hourly rate for employment law counsel in Denver was $ 290 through the

end of 2007, and no more than $300 per hour thereafter.

As to Mr. Potter's first argument, the Supreme Court has recognized that in situations

such as these, where the plaintiff's entitlement to attorney's fees must await the conclusion of the

case several years after the services are rendered, courts typically offset the delay in payment by

either basing the award on current, instead of historical, billing rates, or by adjusting historical

fees to account for their present value (*i.e.*, by awarding prejudgment interest on the fee award).[5]

---

[5]An argument could be made that this line of reasoning is inapplicable in this situation.
Arguably, the Supreme Court's reasoning in *Jenkins* – that use of current rates properly reflects
lost time value of money on fees billed, but not collected, in earlier years – is appropriate only
where rates have increased over time due to inflation.  In other words, an attorney who bills $100
per hour in the initial years of a case, and who later increases his rate to $125 to keep pace with
inflation, might be entitled to recover his earlier hours at the $125 rate, as a current payment of
$125 per hour is the functional equivalent of the attorney having received $100 per hour at the
time the service was rendered, plus the interest that could be earned on that $100 between the
date of payment and the present day. However, the same logic might not apply where, as in
Davis' case, the increased hourly rate does not simply track inflation, but rather, reflects the
attorney's increased experience and ability to handle more complex matters more efficiently.
     The Defendants did not clearly raise such an argument in their brief, and thus, the Court
need not reach it.  In any event, the Court is aware of no persuasive authority that interprets

*See Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989).  Mr. Potter does not offer any meaningful

argument as to why the Court should deviate from this practice, and thus, the Court will award

all reasonable hours worked by Mr. LaFond at the appropriate rate for 2008.  This renders moot

any argument by Mr. Potter as to the reasonableness of hourly rates prior to 2008.

Ms. Morris has come forward with evidence that the market rates for experienced

employment lawyers in 2008 is between $ 300 and $ 375 per hour.  Mr. Potter does not respond

with evidence disputing this range; he comes forward only with evidence that in 2007, a

particular practitioner himself charged $ 290 per hour; that practitioner did not opine as to the

range of reasonable hourly rates prevailing in the local market.  Mr. Potter further argues that

although Mr. LaFond's requested rate is within the range of prevailing rates, the Court should

favor the bottom, rather than the top, of the range for various reasons.  The Court declines to

slice the issue of the relative qualifications and experience of Mr. LaFond and other practitioners

as finely as requested by Mr. Potter.  In the absence of specific evidence that would show Mr.

LaFond's hourly rate of $ 375 to be unreasonable, the Court accepts that rate.

Mr. Potter makes an abbreviated argument that Ms. Sweeney's requested hourly rate of

$300 is excessive, and that a reasonable rate for her services is $ 275.  As with his challenge to

Mr. LaFond's rate, Mr. Potter supports his challenge to Ms. Sweeney's rate with an affidavit[6]

---

*Jenkins* in this manner.  Moreover, this concern is easily rectified by awarding only those hours
that a lawyer at Davis' current level of experience would have expended on the work he
performed at a time when he was less experienced.  The Court's assessment of the number of
hours reasonably expended on this case has been made with this issue in mind.

[6]The affidavit in the Court's records is incomplete.  However, the caption of the affidavit
reveals that it was originally filed in a prior case before this Court, and the Court has reviewed
the complete affidavit in the Court's electronic docket records of the original case.  *See
Vialpando v. Johanns*, D.C. Colo. Case No. 05-cv-01904-MSK-BNB, *Docket* # 54-3.

that merely contends the fact that a particular affiant's personal hourly rate was reasonable, not

an affidavit that contends that the rate requested by Ms. Sweeney exceeds that which is

reasonable in the local market.  In the absence of evidence that a rate of $ 300 is unreasonable

for Ms. Sweeney, that Court accepts that rate for her services.

Ms. Morris seeks fees at a rate of $ 180 per hour for time spent on the case by three

associate attorneys.  Mr. Potter argues that the associates were, in fact, contract attorneys and

that a reasonable rate for their services would be $ 75.  As with its challenge to Ms. Sweeney's

rate, Mr. Potter's support for this argument is an affidavit that merely reflects that a particular

attorney billed work from contract attorneys at $ 75 per hour; the affidavit does not purport to

assert that this is the maximum reasonable hourly rate for such work.  Accordingly, in the

absence of contrary evidence, the Court accepts the rate of $ 180 per hour for these associates.

Finally, Mr. Potter challenges Ms. Morris' request for $ 100 per hour of paralegal time.

Mr. Potter contends that Ms. Morris' evidence on the reasonableness of this rate is that her

counsel's firm actually billed paralegal time at that rate, but does not establish that this is a

reasonable rate in the Denver area.  The Court finds that although Ms. Sweeney's affidavit does

not expressly opine that the rates her firm charges for paralegal time is within the prevailing

range in the local market, the Court can infer that fact from the various averments in the affidavit

and, more importantly, Mr. Potter offers only a conjectural argument that such a rate is not

reasonable.  On the limited evidence before the Court on this issue, the Court finds that Ms.

Morris has carried her burden of showing that a rate of $ 100 per hour for paralegal time is

reasonable.

Thus, the Court turns to the question of the reasonableness of the hours claimed.  The

Court awards attorney's fees only for those hours that were reasonably expended on the litigation, and the burden is on Ms. Morris to demonstrate that her counsel used "billing judgment" in winnowing down the hours <u>actually</u> spent to those <u>reasonably</u> expended *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005). In other words, the Court will not award fees for time spent by counsel that was excessive, redundant, or otherwise unnecessary. *Robinson v. City of Edmond*, 160 F.3d 1275, 1280-81 (10th Cir. 1998).

Mr. Potter objects to only a handful of specific billing entries by Ms. Morris' counsel, namely, those involving her Motion to Amend the Judgment. Given the lack of merit in that motion, the Court agrees that these particular billing entries, totaling $ 2,992, should not be awarded.

The thrust of Mr. Potter's opposition to the fee request is directed at Ms. Morris' lack of success on the sex discrimination and sexual harassment claims and the general disparity between the amount of fees claimed and the jury's verdict. In assessing the reasonableness of claimed hours, the Court considers numerous factors, including, but not limited to, whether the tasks for which compensation is sought are those that would normally be billed to a paying client, the complexity of the case, the number of reasonable strategies pursued, the aggressiveness of the other side, duplication of effort by multiple counsel, and the clarity with which time spent is recorded and allotted to specific tasks. *Id.*, *citing Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983), *citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

The Court's analysis of the question of reasonable hours is also framed by two decisions from the United States Supreme Court. In *Hensley*, the Court observed that the extent of the

13

results obtained by the plaintiff was an "important factor" in the fee calculation. 461 U.S. at 424. In situations where a plaintiff achieved less than total success, *Hensley* suggests a two-part inquiry to determine whether to accept the total number of hours worked as reasonable: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* With regard to the first inquiry, work on claims that are inextricably linked or which arise from the same core facts should be compensable even though only some of the legal theories applied to those facts were successful. *Id.* By contrast, where separate claims could logically have been brought as separate lawsuits, it would be inappropriate to award fees on the unsuccessful claims. *Id.* With regard to the second inquiry, *Hensley* suggests that "[w]hen a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," even though some of the theories urged by that plaintiff were rejected. 461 U.S. at 435. By contrast, if the plaintiff "achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.

The Court revisited the issue again three years later in *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). There, the Court rejected an argument that an attorney's fee award in a civil rights case should not exceed some precise mathematical multiplier of the amount of damages awarded. *Id.* Although the amount awarded is "certainly relevant" to the analysis, the Court cautioned that it is only one of several factors to be considered. *Id.* However, the Court noted that "where recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages

awarded as compared to the amount sought." *Id.* at 585.

At the outset, the Court notes that Ms. Morris was successful only on one of the three claims she asserted. She argues that all three claims arose from the same core facts, such that roughly the same amount of time would have been spent preparing and trying the case if only the retaliation claim were at issue. The Court rejects this contention.

Compared to the fairly sprawling hostile environment claim, that entailed discussion of events dating back to 1998, the retaliation claim presented by Ms. Morris was fairly compact. Although Mr. Potter somewhat disputed the extent of Ms. Morris' protected activity, the nature of those disputes did not require extensive testimony regarding each alleged acts of harassment complained of. Ms. Morris argues that it was necessary for her to prove that she had a good faith belief that the conduct she complained of violated Title VII, and thus, she had to testify about the underlying events of each incident, but the record does not reflect that the Defendant ever contested, prior to or at trial, that Ms. Morris' complaints were made in anything but good faith. Accordingly, it was only necessary for the retaliation claim for Ms. Morris to establish the <u>fact</u> of prior complaints, not to delve into the particular acts underlying those complaints.

Similarly, the only adverse action upon which Ms. Morris' retaliation claim was based was her reassignment to the GMF, a transfer whose particulars were essentially stipulated to by the parties. Proving that the Postal Service's purported non-retaliatory reasons were pretextual was a fairly straightforward exercise, given that Postal Service management practically admitted as much when advising Ms. Morris of the decision. On this record, the Court finds that the bulk of the evidence adduced at trial was not critical – or even relevant – to the fairly narrow retaliation claim presented, and thus, a substantial reduction in the number of hours claimed by

15

Ms. Morris is required.[7]

Because it is impossible to specifically identify and excise time spent by Ms. Morris'
counsel on the unsuccessful claim, the Court will resort to a simple percentage-based reduction
in the amount of hours claimed. Mr. Potter suggests that a 60% reduction in the fees requested is
sufficient to excise time spent on the two unsuccessful claims, while still acknowledging the
minimal factual overlap that existed among the claims. The Court agrees. For the reasons
discussed above, the Court finds that it would be inequitable to apportion fees equally among the
factually elaborate sex discrimination and sexual harassment claims and the relatively simple and
straightforward retaliation claim, suggesting that a reduction of 66% or more might be
appropriate. At the same time, there are a number of factual and procedural matters that are
simply inherent to litigation that would have required Ms. Morris' counsel to expend time even if
the unsuccessful claims were never pursued. Even in a case alleging only retaliation, time would
have been spent developing jurisdictional allegations in pleadings, preparing and maintaining
case files, delving into witnesses' backgrounds in depositions, drafting non-substantive jury
instructions and portions of the Pretrial Order, etc. These inherent litigation costs were
necessarily incurred in pursuing the successful retaliation claim, but were not tripled simply

---

[7]The Court does not make a separate reduction based on Ms. Morris' degree of success
relative to the amounts she may have sought or demanded. Mr. Potter argues that Ms. Morris
was demanding $ 300,000 in compensatory damages as of the date of the Scheduling Order
(**#10**), but neither the Pretrial Order nor Ms. Morris' opening or closing statements at trial
attempted to quantify her damages in any specific amount. Absent evidence of a settlement
demand or other assertion of damages in a fixed amount made in close proximity to trial, the
Court will assume that the jury's verdict is in line with the amounts actually sought by Ms.
Morris. Nevertheless, the Court remains cognizant of the general rule of *Hensley* and *City of
Riverside* that the amount of reasonable fees in a case bears a close but somewhat elastic
connection to the amounts awarded by the jury.

because additional claims were asserted. Thus, simply dividing the requested hours by 66%

would not accurately reflect these sunken costs to Ms. Morris. Having considered all of the

relevant circumstances of this case, the Court finds that an across-the-board reduction of 60% in

the hours claimed by Ms. Morris is necessary to account for her success on only the retaliation

claim.

To calculate the lodestar, the Court begins with the $ 195,585 figure initially requested

by Ms. Morris. It deducts $ 2,992 in fees expended on Ms. Morris' unsuccessful claim for lost

overtime, yielding $ 192,593. The Court adds $ 1,260 in fees claimed by Ms. Morris in drafting

the reply brief in support of her fee claim, particularly insofar as much of that brief was devoted

to successfully resisting Mr. Potter's challenges to hourly rates. That sum yields $ 193,853,

which the Court then reduces by 60%, for a total lodestar of $ 77,541. The Court finds this to be

a fair and reasonable attorney's fee in light of all the facts and circumstances of this case.

Finally, the Court turns to Ms. Morris' request for $ 4,283.58 in additional costs. Mr.

Potter concedes that many of these costs are properly recoverable, and only lodges a handful of

challenges. Ms. Morris concedes that service of process expenses for Sue Poole should be

disallowed, and clarifies that those expenses amount to $91.63. The Court agrees with Mr.

Potter that the costs of obtaining a transcript for Linda Hilton should be disallowed, as Ms.

Hilton did not testify at trial. The mere fact that Ms. Hilton was listed on the witness list,

without more, is not sufficient to establish that it was necessary to order the transcription of her

deposition in anticipation of trial. The costs of Ms. Hilton's transcript is aggregated with that of

Judith Ford in a single billing entry for $ 661, and in the absence of evidence to the contrary, the

Court will assume that Ms. Hilton's transcript was half that cost. Thus, $ 300.50 in costs is

disallowed. The Court agrees with Ms. Morris that awarding the costs of obtaining Ms. Ford's deposition transcript, as well as that of Amy Jones, should be awarded. Although these witnesses gave ample testimony that was germane largely to the unsuccessful claims, some of their testimony was relevant and persuasive on issues relating specifically to the retaliation claim and the damages arising therefrom.

Accordingly, the Court awards costs to Ms. Morris in the amount of ($ 4,283.58 - $91.63 - $ 300.50 =) $ 3,891.45.

## CONCLUSION

For the foregoing reasons, Ms. Morris' Motion for Award of Back Pay (# 59, as amended # 60) is DENIED. Ms. Morris' Motion to Modify the Judgment to Include Overtime Pay (# 64) is DENIED. Ms. Morris' Motion for Attorney's Fees (# 70) is GRANTED IN PART, insofar as the Court awards fees in the amount of $ 77,541 and additional costs in the amount of $3,891.45, and DENIED IN PART, to the extent amounts in excess of this are sought. The Judgment (# 61) is DEEMED AMENDED to reflect the costs and fees awarded herein.

Dated this 22nd day of December, 2008

BY THE COURT:

_____

Marcia S. Krieger
United States District Judge